UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EAGLE SYSTEMS AND SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL ASSOCIATION OF MACHINISTS, DISTRICT LODGE 725, <br><br> Defendant. | No.  2:16-cv-02077-JAM-EFB <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND COUNTER MOTION TO CONFIRM ARBITRATION AWARD** |

This case involves a dispute about an arbitration award.[1] Plaintiff Eagle Systems and Services, Inc. ("Eagle") filed its complaint to vacate an arbitration award under the Labor Management Relations Act ("LMRA").  ECF No. 1.  Defendant International Association of Machinists, District Lodge 725 ("Union") moves this Court for an order dismissing Eagle's complaint under Fed. R. Civ. P. 12(b)(6) and counter-moves for an order confirming the arbitration award.  ECF No. 7.  Eagle

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for November 15, 2016.

1

opposes Union's motion and counter motion.  ECF No. 19.

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Eagle and Union entered into a collective bargaining agreement ("CBA").  CBA, attached to Complaint as Exhibit 1.  The CBA requires Eagle to provide full-time and part-time pilot and loadmaster instructors for the C-17 Training System Program at the Travis Air Force Base in Fairfield, California ("bargaining-unit employees").  Exh. 1 at 6.  Union represents these bargaining-unit employees.  Id.

Except in emergencies, the CBA prohibits non-bargaining-unit employees (i.e., Eagle employees not covered by the agreement) from performing work typically performed by the bargaining unit.  Id. at 17.  Nor can a non-bargaining-unit employee's work "cause a bargaining unit employee to be laid off, displaced or excluded from overtime."  Id. at 18.

The CBA also includes a grievance procedure resulting in final and binding arbitration.  Id. at 10-12.  Under the CBA, the arbitrator's decision "shall be final and binding on all parties," provided the arbitrator does not "add to, subtract from, modify or in any way change" CBA provisions.  Id. at 12.

After executing the CBA with Union, Eagle modified a subcontract it already had with L-3 Communications Link Simulation & Training Division ("L-3").  Modified Subcontract, attached to Complaint as Exhibit 3.  Under the original subcontract, Eagle provided five full-time equivalent pilot instructors at Travis Air Force Base.  Compl. at 3.  But, because L-3 hired a Site Manager to perform bargaining-unit work, the Modified Subcontract reduced the staff by one full-time

```
 1  equivalent instructor.  Exh. 3 at 6-8.  So, Eagle terminated two
 2  part-time pilot instructors, which also precluded the remaining
 3  bargaining-unit employees from working overtime.  Compl. at 5.
 4       Union filed a grievance, alleging that Eagle violated the
 5  CBA when an L-3 Site Manager began performing bargaining-unit
 6  work and when Eagle terminated two bargaining-unit employees.
 7  Grievance Statement, attached to Complaint as Exhibit 4.  The
 8  parties could not resolve their differences, so Union submitted
 9  the matter to arbitration.  Compl. at 5.
10       Meanwhile, Union filed an Unlawful Labor Practice Charge
11  against Eagle with the National Labor Relations Board ("NLRB"),
12  alleging that Eagle violated several provisions under the
13  National Labor Relations Act ("NLRA") by transferring work out of
14  the bargaining unit and terminating two bargaining-unit
15  employees.  ULP Charge, attached to Complaint as Exhibit 5.  But
16  the Regional Director declined to issue a complaint.  Regional
17  Director's Decision, attached to Complaint as Exhibit 6.  Then
18  Union appealed the Regional Director's decision, but the General
19  Counsel's Office affirmed it.  Office of the General Counsel's
20  Decision, attached to Complaint as Exhibit 9.
21       One day before the General Counsel's Office issued its
22  affirmance, the arbitrator held a hearing on Union's grievance.
23  Compl. at 7.  About one month later, the arbitrator concluded
24  that Eagle violated the CBA.  Arbitrator's Decision, attached to
25  Complaint as Exhibit 10.  He issued an award requiring Eagle to
26  reinstate any terminated bargaining-unit employees, to pay
27  overtime to those bargaining-unit employees who lost that
28  opportunity, and to take all other steps necessary to return to
```

the pre-violation status quo.  Exh. 10 at 9-10.

Eagle then filed its complaint in this Court to vacate the arbitration award, alleging that the arbitrator exceeded his authority, that the award does not draw its essence from the CBA, that the award violates public policy, and that the award conflicts with a prior NLRB ruling.  Compl. at 1.  Union now moves to dismiss Eagle's complaint and counter-moves to confirm the arbitration award.

## II.   OPINION

### A.   Procedural Issue

In response to a complaint to vacate an arbitration award, a party may simultaneously move to dismiss under Rule 12(b)(6) and move to confirm the award.  See K&M Installation, Inc. v. United Bhd. of Carpenters, Local 45, No. 15-cv-05265, 2016 WL 1559712, at *1 (N.D. Cal. Apr. 18, 2016) (granting defendant's Rule 12(b)(6) motion to dismiss and "Counter-Motion" to confirm arbitration award).  Even when a party files only a Rule 12(b)(6) motion to dismiss a complaint to vacate an arbitration award, a court may, sua sponte, treat that motion as a motion to confirm the award.  See Sanluis Devs., LLC v. CCP Sanluis, LLC, 556 F. Supp. 2d 329, 332 (S.D.N.Y. 2008).  That is because a motion to dismiss a complaint to vacate an arbitration award is essentially the same as a motion to confirm an award.  See First Fed. Fin. Corp. v. Carrion-Concepcion, No. 14-1019, 2016 WL 1328769, at *1 (D.P.R. Apr. 5, 2016) ("motion to dismiss 'a complaint to vacate or modify an award is functionally equivalent to a motion to confirm an award'") (internal

1  citations omitted); Gen. Elec. Co. v. Anson Stamping Co. Inc.,
2  426 F. Supp. 2d 579, 595 (W.D. Ky. 2006) (finding that a motion
3  to dismiss is the "practical equivalent" of a motion to confirm
4  and treating it as such).  Indeed, sometimes judicial economy
5  interests or a case's procedural posture warrants treating a
6  motion to dismiss as a motion to confirm an arbitration award.
7  See Roy v. Buffalo Philharmonic Orchestra Society, Inc., 161 F.
8  Supp. 3d 187, 193 (W.D.N.Y. 2016).

9       The parties dispute whether it was procedurally proper for
10 Union to join its motion to dismiss with its counter motion to
11 confirm the arbitration award.  Eagle says it was procedurally
12 improper for several reasons:  (1) Union violated Rule 12(g) by
13 joining a Rule 12 motion and a non-Rule-12 counter motion;
14 (2) Union's counter motion violated E.D. Cal. L.R. 230(e) by
15 bringing a motion against a complaint; (3) courts decide motions
16 to vacate or confirm awards under the LMRA on summary judgment;
17 and (4) it would be unduly prejudicial to decide Union's counter
18 motion now because Eagle has not had the opportunity to fully
19 brief or provide evidence.  See Opp'n at 4-5.

20      Conversely, Union maintains that it properly joined its
21 motion and counter motion.  First, Union says, courts commonly
22 adjudicate motions to dismiss joined with motions to confirm
23 awards.  See Reply, ECF No. 20, at 1.  Second, it was unclear
24 whether Eagle intended its complaint to operate as a motion.
25 Id.  And, third, ruling now would not prejudice Eagle or L-3
26 because (i) L-3 is neither a party to this litigation nor the
27 CBA, and (ii) there are no factual issues, so the court may
28 decide the legal question on the pleadings.  Id. at 1-2.

1      The Court finds that Union properly joined its motion to
2 dismiss with its counter motion to confirm the arbitration
3 award.  First, courts often treat motions to dismiss as motions
4 to confirm an award.  See First Fed. Fin. Corp., 2016 WL 1328769
5 at *1; Gen. Elec., 426 F. Supp. 2d at 595.  Eagle cites Kemner
6 v. Dist. Council of Painting and Allied Trades No. 36 to support
7 its argument that courts decide motions to vacate or confirm
8 arbitration awards under the LMRA on summary judgment, not the
9 pleadings.  768 F.2d 1115 (9th Cir. 1985).  Eagle's reading of
10 Kemner is misplaced.  Kemner involved a complaint to vacate one
11 arbitration award and to confirm two others under the LMRA and
12 the Federal Arbitration Act.  Id. at 1117.  The defendant moved
13 to dismiss for lack of subject matter jurisdiction and for
14 failure to state a claim.  Id.  Without explanation, the
15 district court granted the defendant's motion; the Ninth Circuit
16 reversed, confirming the first arbitration award and declining
17 to reach the remaining substantive issues.  Id.  Kemner is
18 easily distinguishable from the instant case and does not
19 support Eagle's argument.  Also, given that courts frequently
20 treat motions to dismiss as motions to confirm arbitration
21 awards, Eagle's Rule 12(g) argument fails.

22     Second, it is unclear whether Eagle intended its complaint
23 to operate as a motion to vacate the award, which undercuts
24 Eagle's L.R. 230(e) argument.  On the one hand, Eagle attached
25 to its complaint 95 pages worth of exhibits (including the CBA,
26 the Modified Subcontract, both NLRB rulings, and the
27 Arbitrator's Decision), suggesting that Eagle wanted the Court
28 to treat its complaint as a motion.  See Exhs. 1, 3, 6, 9, 10.

On the other hand, Eagle requests leave to amend if the Court dismisses the complaint. Opp'n at 15. Nevertheless, the Court need not resolve whether Eagle has filed a motion to vacate the arbitration award because Eagle, in its opposition brief, "had the opportunity to defend against [the Union's counter motion] and the enforcement of that [a]ward." See K&M, 2016 WL 1559712 at *1. And Eagle did just that.

Lastly, ruling on Union's counter motion will not prejudice Eagle because the Court faces a legal question it can resolve on the pleadings. Given the detailed record Eagle provided, this Court has the evidence it needs to decide the issues before it. See Exhs. 1, 3, 6, 9, 10. Indeed, "a court is barred from disregarding the arbitrator's factual determinations, let alone supplementing them with its own." Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers, 886 F.2d 1200, 1207 (9th Cir. 1989) (en banc). As for prejudice against L-3, the Court need not address that issue because L-3 is neither a party to this litigation nor a signatory to the CBA.

B.   Standard of Review

The Steelworkers Trilogy recognizes the unique interplay between arbitration and collective bargaining agreements. See United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564 (1960); United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593 (1960). As the Supreme Court has explained, "the grievance machinery under a collective bargaining agreement is at the very heart of the system of

industrial self-government." Warrior & Gulf, 363 U.S. at 581. This explains why, in the labor context, arbitration more than merely resolves disputes: "The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement." Id.

Eagle seeks to vacate the arbitration award under § 301 of the LMRA. See Compl. at 1. Section 301 empowers this Court to review an arbitration required under a collective bargaining agreement. See generally Enter. Wheel & Car Corp., 363 U.S. 593 (1960). But, because arbitration plays a critical role in the collective bargaining agreement context, courts reviewing labor arbitration awards afford a "nearly unparalleled degree of deference" to the arbitrator's decision. Stead Motors, 886 F.2d at 1205. This deference applies to the arbitrator's interpretation of the collective bargaining agreement and to his factual findings, see id. at 1207, as well as the arbitrator's interpretation of the issue's scope. See Pack Concrete, Inc. v. Cunningham, 866 F.2d 283, 285-86 (9th Cir. 1989).

Because "the parties have[e] authorized the arbitrator to give meaning to" the CBA's text, the Supreme Court has held that a court cannot vacate an arbitration award simply because the arbitrator misread the collective bargaining agreement. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987). Indeed, an arbitrator cannot misinterpret a collective bargaining agreement because he essentially functions as the parties' surrogate: "[H]is award is their contract." See Stead Motors, 886 F.2d at 1205 (internal citation omitted)

(original emphasis).

The Ninth Circuit has "taken this instruction to heart," reiterating that "even if we were convinced that the arbitrator misread the contract or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award." Sw. Reg'l Council of Carpenters v. Drywall Dynamics, Inc., 823 F.3d 524, 530 (9th Cir. 2016) (internal citation and quotation marks omitted). Simply put, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court must uphold the arbitration award. See Misco, 484 U.S. at 38 (emphasis added).

Likewise, courts give great deference to an arbitrator's factual determinations because "[t]he parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them." Misco, 484 U.S. at 45. "[I]mprovident, even silly, factfinding ... is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts." Id. at 39.

Finally, "an arbitrator's interpretation of the scope of the issue submitted to him is entitled to the same deference accorded his interpretation of the collective bargaining agreement." Pack Concrete, 866 F.2d at 285. Indeed, interpreting the submitted issue often requires interpreting the collective bargaining agreement, "a job clearly for the arbitrator." Id. at 285-86 (internal citation omitted).

Despite these well-established principles, under § 301 of the LMRA, a court may vacate an arbitration award if (1) the

award does not draw its essence from the CBA; (2) the arbitrator exceeds the issue's scope; (3) the award violates public policy; or (4) the award is procured by fraud.  See Sprewell v. Golden State Warriors, 266 F.3d 979, 986 (9th Cir. 2001).

### C. Analysis

#### 1. The Award Draws Its Essence From The CBA

Under controlling Supreme Court precedent, a court may declare an arbitrator's decision unenforceable only when the arbitrator strays from interpreting and applying the collective bargaining agreement and effectively "dispense[s] his own brand of industrial justice."  Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (internal citation and quotation marks omitted).  An arbitrator may "look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice" but to declare the award unenforceable.  See Enter. Wheel & Car Corp., 363 U.S. at 597. The critical inquiry is simple:  "Did the arbitrator look at and construe the contract"?  See Drywall Dynamics, 823 F.3d at 532. "If so, the court's inquiry ends," id., provided the arbitrator's award does not ignore the contract's "plain language."  Stead Motors, 886 F.2d at 1205 n.6.

The parties dispute whether the arbitration award draws its essence from the CBA.  Eagle says it does not for two reasons. First, the arbitrator's decision that the Modified Subcontract violated the CBA is not a plausible interpretation of the CBA because the CBA's plain language shows that it applied only to

10

1  Eagle.  Opp'n at 9.  Second, the arbitrator modified the CBA to
2  bind L-3 by requiring Eagle to reinstate terminated employees,
3  which necessarily requires L-3 to remove its Site Manager.  Id.
4  at 10.
5     Union disagrees, contending that Eagle's "plausibility"
6  argument invokes the wrong standard.  Mot. at 7.  The
7  arbitrator, Union says, needed only to arguably look at and
8  construe the CBA, and he did that.  Id. at 6-7.  Union adds that
9  the arbitrator also reviewed the Modified Subcontract to show
10 that Eagle agreed to reduce staffing, which falls within the
11 submitted issue's scope.  Mot. at 9.  Finally, Union reminds the
12 Court that it must afford great deference to the arbitrator's
13 interpretation of the submitted issue's scope.  Reply at 3-4.
14    The Court concludes that the arbitration award draws its
15 essence from the CBA.  First, Eagle proposes the wrong standard:
16 "The question is not ... whether the arbitrator's interpretation
17 of the agreement was 'plausible,' ... but instead whether he
18 made any interpretation or application of the agreement at all."
19 Drywall Dynamics, 823 F.3d at 531-32.  Here, the arbitrator
20 clearly looked at and applied the CBA.  See Exh. 10 at 6, 9.
21    Moreover, Eagle misconstrues the arbitrator's decision.
22 Eagle says that the arbitrator "found that by virtue of L-3
23 reducing the scope of the number of instructors Plaintiff
24 provided at Travis Air Force Base and employing L-3's own site
25 instructor to perform instructional duties, Plaintiff violated
26 the CBA."  Compl. at 8.  Eagle also contends that the arbitrator
27 modified the CBA to bind L-3 because requiring Eagle to
28 reinstate terminated workers "necessarily requires" L-3 to

1  remove its Site Manager.  Opp'n at 10.  Although Eagle suggests
2  that the arbitrator targeted L-3, the arbitrator puts the onus
3  on Eagle.  See Exh. 10 at 9 ("[T]he arbitrator has not been
4  persuaded that [Eagle] can vacate its accountability"; Eagle
5  "voluntarily negotiated a [CBA] with the Union"; Eagle
6  "negotiated with L3 to transfer work out of the bargaining
7  unit"; Eagle "violated the...CBA").  Any effect L-3 felt is
8  simply an indirect consequence of the award, and Eagle's own
9  language suggests the same.  See Opp'n at 10 (requiring Eagle to
10 reinstate terminated workers "necessarily requires L-3 to
11 remove" its Site Manager) (emphasis added).
12     Second, the award did not ignore the CBA's plain language.
13 The CBA prohibits transferring bargaining-unit work from
14 bargaining-unit employees to non-bargaining-unit employees.  See
15 Exh. 1 at 17.  The award enforces this prohibition by requiring
16 Eagle to pay overtime to the bargaining-unit employees who lost
17 that opportunity after the transfer, to reinstate terminated
18 workers, to make terminated workers whole, and to take other
19 steps necessary to return to the pre-violation status quo.  See
20 Exh. 10 at 9-10.
21     Finally, that the arbitrator looked to the Modified
22 Subcontract to show that Eagle voluntarily transferred
23 bargaining-unit work is insufficient grounds to vacate the award
24 because, ultimately, the award draws its essence from the CBA.
25 The parties asked the arbitrator to decide whether Eagle
26 violated the CBA when an L-3 Site Manager began performing
27 bargaining-unit work.  See Exh. 10 at 3.  The arbitrator
28 concluded that his assessment required analyzing primarily the

12

1  CBA, but also the Modified Subcontract—to show that Eagle
2  voluntarily transferred bargaining-unit work.  This is
3  permissible.  See Enter. Wheel & Car Corp., 363 U.S. at 597
4  (concluding that arbitrator may "look for guidance from many
5  sources," provided the award draws its essence from the
6  collective bargaining agreement).  Because the arbitrator's
7  words do not "manifest an infidelity" to his obligation to draw
8  the award's essence from the CBA, see id., this Court affords
9  great deference to his interpretation of the issue's scope.  See
10 Pack Concrete, 866 F.2d at 285.
11      In short, the arbitrator addressed the submitted issue by
12 looking at and construing the CBA—that is all the law requires.
13 See Drywall Dynamics, 823 F.3d at 531-32 (concluding that if the
14 arbitrator interpreted or applied the CBA, then "the court's
15 inquiry ends").  The Court will not vacate the arbitration award
16 on this ground.
17              2.   The Award Does Not Violate Public Policy
18      There exists a very limited public policy exception to the
19 general rule requiring courts to enforce arbitrators' decisions
20 that interpret and apply collective bargaining agreements.  See
21 W.R. Grace & Co. v. Local Union 759, Int'l Union of United
22 Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757,
23 766 (1983).  This narrow exception involves "a specific
24 application of the more general doctrine, rooted in common law,
25 that a court may refuse to enforce contracts that violate law or
26 public policy."  Misco, 484 U.S. at 42.
27      When evaluating whether to vacate an award on public policy
28 grounds, the court engages in a two-step inquiry.  First, the

1  court must determine that an "explicit," "well defined and
2  dominant" public policy exists. W.R. Grace, 461 U.S. at 766.
3  The policy must arise from "the laws and legal precedents," and
4  cannot "be the product of the parties' or the courts' general
5  considerations of supposed public interests." Stead Motors, 886
6  F.2d at 1210 (internal citation and quotation marks omitted).
7  The Ninth Circuit has held that "[t]he public policy set forth
8  in the NLRA represents well defined and dominant public policy."
9  Van Waters & Rogers, Inc. v. Int'l Bhd. of Teamsters,
10 Chauffeurs, Warehousemen & Helpers of Am., Local Union 70, 913
11 F.2d 736, 742 (9th Cir. 1990) (internal quotation omitted). The
12 second step requires the court to find that the identified
13 policy specifically militates against relief provided by the
14 arbitration award. See Stead Motors, 886 F.2d at 1213-14.

15      As evidenced by this limited inquiry, courts should
16 cautiously vacate an arbitration award on public policy grounds
17 "because the finality of arbitral awards must be preserved if
18 arbitration is to remain a desirable alternative to courtroom
19 litigation." See Aramark Facility Servs. v. Serv. Emps. Int'l
20 Union, Local 1877, AFL CIO, 530 F.3d 817, 823 (9th Cir. 2008)
21 (internal citation and quotation marks omitted).

22      The parties dispute whether the arbitration award violates
23 public policy under the NLRA. Eagle says it does for three
24 reasons. First, the award violates § 8(a)(1)-(2) because
25 requiring that all pilot and loadmaster instructors comprise the
26 bargaining unit infringes on L-3 employees' § 7 rights to make
27 their own choices about representation. Compl. at 9. Second,
28 the arbitrator infringed on the NLRB's primary jurisdiction by

modifying the bargaining unit's scope when it included L-3 employees in its analysis. Id. at 9-10. And, third, Eagle maintains that the award violated the NLRA's anti-featherbedding provisions under § 8(b)(6) by requiring Eagle to pay people for services they cannot perform. Id. at 10.

Union argues that the award does not violate NLRA policy because Eagle has not alleged that the award conflicts with an explicit, well-defined, and dominant public policy, i.e. Eagle has not alleged facts establishing that the award imposed binding obligations on L-3, extended rights or obligations of union members to L-3 employees, or required Eagle to pay workers who have not provided a "bona fide offer of competent performance." Reply at 4.

The Court agrees with Union, but for a slightly different reason. Because the NLRA qualifies as "explicit, well defined and dominant public policy," see Van Waters, 913 F.2d at 742, the issue turns on whether the NLRA militates against the relief provided by the arbitrator's award. See Stead Motors, 886 F.2d at 1213-14. It does not. The award imposes no burden on L-3's employees, so it does not violate § 7 or § 8(a)(1)-(2). Nor does the award require Eagle to pay the Site Manager for work it can no longer perform, so the award does not violate § 8(b)(6). Cases like the one here reaffirm the principle that courts should cautiously vacate an arbitration award on public policy grounds—otherwise arbitration will not "remain a desirable alternative to courtroom litigation." See Aramark Facility Servs., 530 F.3d at 823. The Court declines to vacate the arbitration award on public policy grounds.

1             3.    The Arbitrator Did Not Exceed His Authority

2       An arbitrator does not exceed his authority if, in
3  addressing an issue submitted before him, he looks at and
4  construes the collective bargaining agreement.  See Drywall
5  Dynamics, 823 F.3d at 529-30.  Stated differently, an arbitrator
6  exceeds his authority if he "dispense[s] his own brand of
7  industrial justice."  Garvey, 532 U.S. at 509.

8         Eagle first argues that the arbitrator's conclusion
9  amounts to modifying the bargaining unit to include L-3
10 employees.  Opp'n at 7.  Eagle also argues that the arbitrator
11 impermissibly interpreted the Modified Subcontract, a document
12 not at issue.  Id. at 7-8.  And, third, the arbitrator's
13 conclusion that only Eagle could provide instructors essentially
14 decided L-3's rights and obligations.  Id. at 8-9.

15      Conversely, Union argues that the arbitrator did not exceed
16 his authority.  The arbitrator's ruling that Eagle violated the
17 CBA when it modified the subcontract falls within the issue's
18 scope.  Mot. at 8.  And, Union contends, the court must afford
19 great deference to the arbitrator's interpretation of scope.
20 Reply at 3-4.

21      The Court finds that the arbitrator did not exceed his
22 authority.  Again, Eagle misconstrues the arbitrator's decision
23 by suggesting that the arbitrator targeted L-3.  See Opp. 7-9
24 (arbitrator's conclusion "essentially decided L-3's rights and
25 obligations") (emphasis added).  As noted above, the award
26 imposes nothing on L-3, and suggesting that the award has
27 indirect effects on L-3 does not make this conclusion any less
28 true.  The arbitrator answered the issue submitted before him by

16

looking at and construing the CBA, and he issued his award accordingly. See generally Exh. 10. Furthermore, the Court affords great deference to the arbitrator's interpretation of the issue's scope. See Pack Concrete, 866 F.2d at 285. In sum, Eagle has not shown that the arbitrator dispensed "his own brand of industrial justice." See Garvey, 532 U.S. at 509. The arbitration award is not vacated on this ground.

        4.    The Arbitrator's Decision May Differ From The NLRB's Ruling

In cases involving conflicting decisions between the NLRB and an arbitrator, the Ninth Circuit provides guidance as to which decision a district court gives precedence. The inquiry focuses on the NLRB's conduct. If the NLRB simply declined to issue a complaint, then an arbitrator may take the case and decide it differently than the NLRB. See Edna H. Pagel, Inc. v. Teamsters Local Union 595, 667 F.2d 1275, 1279-80 (9th Cir. 1982); see also Warehousemen's Union Local No. 206 v. Cont'l Can Co., Inc., 821 F.2d 1348, 1351 (9th Cir. 1987). But, if the NLRB accepted the case on the merits and issued a decision and order, and a subsequent arbitration "involving the same parties" produces a conflicting award, the district court "need not defer" to the arbitrator's decision. See Carpenters Local Union No. 1478 v. Stevens, 743 F.2d 1271, 1275 (9th Cir. 1984); see also Cont'l Can, 821 F.2d at 1351.

The parties dispute whether the Pagel rule or the Stevens rule applies. Eagle argues that the Stevens rule should be applied, see Opp'n at 14, whereas Union contends Pagal is the controlling authority. See Mot. at 12-13.

1    The Court agrees with Union.  The Pagal rule applies
2 because the NLRB's Regional Director declined to issue a
3 complaint.  See Exh. 6 at 1.  When the NLRB refuses to issue a
4 complaint, an arbitrator may take the case and decide it
5 differently.  See Pagel, 667 F.2d at 1279-80.  In other words,
6 the Stevens rule does not apply here because the NLRB did not
7 accept Union's case on the merits and did not issue a decision
8 and order.  See Stevens, 743 F.2d at 1275.  The Court declines
9 to vacate the arbitration award on this ground.

10       D.    Attorneys' Fees

11    Under the American rule, absent statutory or contractual
12 authorization, a prevailing litigant usually cannot collect
13 attorneys' fees.  See Alyeska Pipeline Serv. Co. v. Wilderness
14 Soc'y, 421 U.S. 240, 247 (1975).  But a court may assess
15 attorneys' fees "when the losing party has acted in bad faith,
16 vexatiously, wantonly, or for oppressive reasons."  Alyeska, 421
17 U.S. at 258-59 (internal citations and quotation marks omitted).

18    A court may find bad faith in several instances.  Bad faith
19 may arise "in conduct that led to the lawsuit" or conduct
20 occurring during that suit.  See Hall v. Cole, 412 U.S. 1, 15
21 (1973).  Bad faith also occurs when a party's "obstinancy in
22 granting [the other party's] clear legal rights necessitated
23 resort to legal action with all the expense and delay entailed
24 in litigation."  See Int'l Union of Petroleum & Indus. Workers
25 v. W. Indus. Maint., Inc., 707 F.2d 425, 428 (9th Cir. 1983)
26 (internal citation omitted).

27    Awarding attorneys' fees in this second context "satisfies
28 a dual purpose—deterrence and compensation."  Id.  The prospect

of attorneys' fees "tends to deter frivolous dilatory tactics." Id. And the award compensates a party "for the added expense of having to vindicate clearly established rights in court." Id.

In the labor arbitration context, deterrence and compensation considerations are especially apt. See Warrior & Gulf, 363 U.S. 577-78. The Ninth Circuit takes this rule seriously, encouraging district courts to award the party seeking enforcement attorneys' fees and reasonable costs because "[e]ngaging in frivolous dilatory tactics not only denies the individual prompt redress, it threatens the goal of industrial peace." W. Indus. Maint., 707 F.2d at 428. Nevertheless, awarding attorneys' fees lies within the district court's discretion. Id.

Each party argues that it is entitled to attorneys' fees. Union argues that it deserves attorneys' fees because (1) Eagle acted in bad faith given that the parties agreed to a grievance arbitration procedure, yet Eagle still challenged the award, causing unnecessary expense and delay; and (2) Eagle's complaint relies on "insubstantial arguments that fly in the face of well-settled law concerning an arbitrator's authority." Mot. at 13-15. Conversely, Eagle raises two points. First, Union does not deserve attorneys' fees because Union's request is premature, the American rule applies, and Union offered no evidence showing that Eagle filed its complaint with ill-motive. Opp'n at 15. Second, Eagle claims that it deserves attorneys' fees because Union forced Eagle to oppose a "frivolous and procedurally improper counter motion," a motion brought in bad faith. Id. at 14-15. In response, Union emphasizes that it has not "acted in

19

a way to impose costs unnecessarily." Reply at 6.

The Court grants Union's request for attorneys' fees, and denies Eagle's request. Eagle not only agreed "to secure a prompt and fair disposition of grievances" and to "final and binding" arbitration, see Exh. 1 at 6, 12, but also filed an action with meritless claims. Furthermore, having ruled that Union properly filed its counter motion, the Court will not grant Eagle attorneys' fees on that basis either. In short, Eagle's behavior is the sort of bad faith the Ninth Circuit held justifies attorneys' fees, especially in the labor arbitration context, where such "frivolous dilatory tactics not only denies...prompt redress," but also "threatens...industrial peace." W. Indus. Maint., 707 F.2d at 428.

### III.   ORDER

For the reasons set forth above, the Court GRANTS WITH PREJUDICE Union's Motion to Dismiss and GRANTS Union's Counter Motion to Confirm the Arbitration Award. The Court also GRANTS Union's request for attorneys' fees and orders Union to file documents required under Local Rule 293 within twenty days of the date of this Order to assist the Court in determining the reasonable amount of attorneys' fees to be awarded.

IT IS SO ORDERED.

Dated:   December 15, 2016

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE