1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  EASTERN DISTRICT OF CALIFORNIA

11

12   EAGLE SYSTEMS AND SERVICES,        No.  2:16-cv-02077 JAM-EFB
     INC.,
13
                    Plaintiff,
14                                       **ORDER GRANTING INTERNATIONAL
          v.                             ASSOCIATION OF MACHINISTS,
15                                       DISTRICT LODGE 725'S MOTION FOR
     INTERNATIONAL ASSOCIATION OF        ATTORNEYS' FEES**
16   MACHINISTS, DISTRICT LODGE
     725,
17
                    Defendant.
18

19        The fight between Eagle and Union continues.  Plaintiff

20   Eagle Systems and Services, Inc. ("Eagle") punched first when it

21   allegedly violated the Collective Bargaining Agreement ("CBA").

22   Defendant International Association of Machinists, District Lodge

23   725 ("Union") hit back by prevailing in arbitration.  Eagle,

24   unshaken, filed a complaint in this Court to vacate that award.

25   ECF No. 1.  Feeling sucker punched, Union moved to dismiss and

26   counter moved to confirm the award.  ECF No. 7.  This Court

27   declared Union the winner by a TKO and awarded attorneys' fees.

28   Order, ECF No. 25.  Having reviewed the parties' briefs, <u>see</u>

                                    1

Mot., ECF No. 27; Opp'n, ECF No. 28; Reply, ECF No. 29, the Court now sets the amount of the attorneys' fees awarded to Union at $17,584.50.[1]

## I.   OPINION

Because this Court's previous Order details the underlying dispute that generated this litigation, the Court will not repeat the facts. See generally Order.  Equally important, although Eagle "did not challenge the Court's [bad faith] ruling," see Opp'n at 1, Eagle still disputes whether its conduct constituted an unjustified refusal to abide by an arbitration award.  This Court already concluded it did.  See Order at 18-20 (explaining Eagle sought to frustrate the award by unjustifiably refusing to abide by the arbitrator's decision).  Eagle does not get a second bite at the apple.

### A.   Lodestar Method

When evaluating requests for attorneys' fees, the court always begins by calculating the lodestar amount, which involves multiplying the number of hours reasonably expended by a reasonable hourly rate.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  A court should exclude from this initial calculation any "excessive, redundant, or otherwise unnecessary" hours expended.  See id. at 434.

But the inquiry does not end there.  There remain other factors that may compel a court to "adjust the fee upward or

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for February 21, 2017.

downward."  See id.  These include:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992).  These Kerr factors, however, are often subsumed within the lodestar amount, so courts must ensure they account for any potential overlap.  See Cunningham v. Cty. of Los Angeles, 879 F.2d 481, 487 (9th Cir. 1989).  And, finally, this district's Local Rule 293(c)(13) adds one more factor:  "[S]uch other matters as the Court may deem appropriate under the circumstances."

The party seeking fees should provide documentary evidence showing "the number of hours spent, and how it determined the hourly rate(s) requested."  McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2008).  Then the opposing party must submit specific rebuttal evidence "challenging the accuracy and reasonableness of the hours charged or the facts asserted by" the moving party.  Gates v. Gomez, 60 F.3d 525, 534-35 (9th Cir. 1995).

B.    Analysis

Union requests $32,968.75 in attorneys' fees, arguing that these were reasonably and necessarily incurred, especially given

3

1  labor arbitration's compensation and deterrence goals.  <u>See</u>
2  <u>generally</u> Mot.  Union contends that the Court need not make a
3  lodestar adjustment.  <u>See id.</u> at 8.  As further explained below,
4  the Court disagrees.

5              1.   <u>Hourly Rates</u>

6       To determine the reasonableness of the hourly rates
7  requested, a court looks to the prevailing market rates in the
8  relevant community for "similar work performed by attorneys of
9  comparable skill, experience, and reputation."  <u>Blum v. Stenson</u>,
10  465 U.S. 886, 895 (1984); <u>Chalmers v. City of Los Angeles</u>, 796
11  F.2d 1205, 1210—11 (9th Cir. 1986).  The relevant community is
12  generally the forum in which the district court sits—not where
13  counsel's firm resides.  <u>Barjon v. Dalton</u>, 132 F.3d 496, 500
14  (9th Cir. 1997).  The "burden is on the fee applicant to produce
15  satisfactory evidence—in addition to the attorney's own
16  affidavits—that the requested [hourly] rates are in line with
17  those prevailing in the community for similar services by
18  lawyers of reasonably comparable skill, experience, and
19  reputation."  <u>Blum</u>, 465 U.S. at 895 n.11.

20       Union states the requested rates "reflect the market rates
21  . . . in the Bay Area and Sacramento Valley."  Mot. at 4.
22  Although Eagle does not challenge the hourly rates Union seeks,
23  <u>See</u> Opp'n at 2 (disputing only the hours expended), the Court
24  finds it unreasonable to, as Union does, treat the Bay Area and
25  Sacramento Valley as the same "community."  Indeed, courts in
26  this district treat the two separately.  <u>See Jones v. Cty. of</u>
27  <u>Sacramento</u>, No. 09-1025, 2011 WL 3584332, at *8 (E.D. Cal. Aug.
28  12, 2011); <u>Beecham v. City of West Sacramento</u>, No. 07-1115, 2009

1  WL 3824793, at *4 (E.D. Cal. Nov. 16, 2009).

2      This distinction matters because the parties litigated the

3  case—the case underlying Union's Motion for Attorneys' Fees—in

4  Sacramento where this Court sits.  See Barjon, 132 F.3d at 500.

5  Because it would be unreasonable to accept rates based on a

6  market different from where the case was litigated, the Court

7  rejects any hourly rates based on Bay Area rates.  See Beecham,

8  2009 WL 3824793 at *4.  Only the Sacramento market rate is

9  appropriate here.

10          a.   Partners

11     Union asks the Court to accept David Rosenfeld's $775

12  hourly rate.  Mot. at 4-5.  Rosenfeld is a named shareholder of

13  the firm Weinberg, Roger & Rosenfeld with "over forty years"

14  experience.  Gray Decl. ¶ 8.  Union cites two cases to support

15  its argument.  The first, Barbosa v. Cargill Meat Sols. Corp.,

16  though instructive, is not binding authority in that this was a

17  more complex case filed in the District's Fresno division.  297

18  F.R.D. 431, 452 (E.D. Cal. 2013).  "Cases litigated in Fresno

19  . . . do not establish the prevailing market rates in the

20  Sacramento community."  Johnson v. Allied Trailer Supply, No.

21  13-1544, 2014 WL 1334006, at *5 (E.D. Cal. Apr. 3, 2014); Jadwin

22  v. Cty. of Kern, 767 F. Supp. 2d 1069, 1124—29 (E.D. Cal. 2011)

23  (holding that Fresno division, not Sacramento division, was

24  relevant legal community to be used in selecting appropriate

25  hourly rates).  The second case, although litigated in

26  Sacramento Superior Court, is also unhelpful.  See Procter v.

27  Auto Care.  Union did not attach this state court case to its

28  supporting declaration and the Court is unable to ascertain why

1    the state court approved Rosenfeld's rate.  And, notably, the

2    only declaration submitted here does not state that $775 is the

3    prevailing rate in Sacramento for a lawyer with Rosenfeld's

4    experience.

5         This makes it difficult for the Court to blindly accept

6    Union's requested rate, especially when a judge in this district

7    recently determined $530 a reasonable rate for partners with 40

8    years of experience.  See Nat'l Grange of the Order of Patrons

9    of Husbandry v. California State Grange, No. 14-676, 2016 WL

10   4765061, at *3 (E.D. Cal. Sept. 12, 2016).  Because Union has

11   not met its burden, and because Rosenfeld's rate partially

12   derives from Bay Area rates, see Gray Decl. ¶ 14, the Court will

13   compensate Rosenfeld at a $530 hourly rate.

14        Union also requests a $650 hourly rate for Matthew Gauger,

15   another shareholder-partner.  Gray Decl. ¶ 9.  Gauger heads the

16   firm's Sacramento office and has 27 years of experience

17   representing labor unions.  Id.

18        Once again, Union's cited authority does not support this

19   requested rate.  For the reasons explained above, the Court will

20   not accept the rates approved in Barbosa or Procter.  And,

21   again, Gauger's requested $650 rate also stems, in part, from

22   Bay Area market rates.  Gray Decl. ¶ 14.

23        Judges in this district have regularly approved hourly

24   rates of $400 or more for partners or experienced attorneys.

25   See, e.g., National Grange, 2016 WL 4765061 at *3 (accepting

26   unopposed $450 requested rate for party with 35 years of

27   experience); Estrada v. iYogi, Inc., No. 13-1989, 2016 WL

28   310279, at *6 (E.D. Cal. Jan. 26, 2016) (approving $400

1   requested rate for partners with as much as 19 years of

2   experience); <u>Trulsson v. Cty. of San Joaquin Dist. Attorneys'</u>

3   <u>Office</u>, No. 11-2986, 2014 WL 5472787, at *6 (E.D. Cal. Oct. 28,

4   2014) (accepting $450 hourly rate for experienced attorney).

5        Once again, Union has not met its burden:  It has not

6   offered sufficient evidence showing that $650 is the prevailing

7   rate in Sacramento for a lawyer with Gauger's experience.

8   Because judges in this district accept rates between $400 and

9   $450 for partners with 20 to 35 years of experience, and Gauger

10  has 27 years of experience, this Court finds a $425 hourly rate

11  reasonable.

12       In sum, the Court will compensate Rosenfeld at a $530

13  hourly rate and Gauger at a $425 hourly rate.

14                   b.   <u>Second-Year Associates</u>

15       Union asks the Court to accept second-year associate

16  Caitlin Gray's $295 hourly rate.  <u>See</u> Gray Decl. ¶ 10.  No case

17  cited by Union supports this.  <u>See Lodi Mem'l Hosp. Ass'n, Inc.</u>

18  <u>v. Blue Cross of California</u>, No. 12-1071, 2012 WL 3638506, at

19  *9, 11 (E.D. Cal. Aug. 22, 2012) (using Los Angeles and San

20  Francisco market rates, not Sacramento rates, to find $300

21  hourly rate appropriate for second-year associate); <u>Barbosa</u>, 297

22  F.R.D. at 452 (E.D. Cal. 2013) (applying $280 hourly rate based

23  on Fresno market).

24       In fact, judges in this district have found $150-$170 an

25  appropriate hourly billing rate for second-year associates.

26  <u>See, e.g., Cosby v. Autozone, Inc.</u>, No. 08-505, 2016 WL 1626997,

27  at *8 (E.D. Cal. Apr. 25, 2016) ($150 for new attorney

28  practicing a little over one year); <u>Orr v. California Highway</u>

1  Patrol, No. 14-585, 2015 WL 9305021, at *4 (E.D. Cal. Dec. 22,

2  2015) (market rate for second and third year associates between

3  $150 and $170 per hour).

4      The Court will therefore compensate Gray at a $170 hourly

5  rate.  She has been practicing law since only 2015, and Union

6  has not met its burden establishing Gray should receive a rate

7  only $5 less than those awarded for fifth-year associates also

8  practicing labor and employment law.  See Cosby, 2016 WL 1626997

9  at *8 (finding $300 rate reasonable for fifth-year associate).

10                c.   Paralegals

11      There is some disagreement among judges in this district

12  about reasonable Sacramento market rates for work performed by

13  paralegals.  Some have found $75 reasonable.  See, e.g., Orr,

14  2015 WL 9305021, at *4; Joe Hand Promotions, Inc. v. Albright,

15  No. 11-2260, 2013 WL 4094403, at *3 (E.D. Cal. Aug. 13, 2013);

16  Friedman v. Cal. State Emps. Ass'n, No. 2-101, 2010 WL 2880148,

17  at *4 (E.D. Cal. July 21, 2010) (citations omitted).  Yet others

18  have found $150 reasonable.  Hall v. City of Fairfield, No. 10-

19  0508, 2014 WL 1286001, at *8 (E.D. Cal. Mar. 31, 2014);

20  Endurance Am. Specialty Co. v. Lance-Kashian & Co., No. 10-1284,

21  2011 WL 5417103, at *31 (E.D. Cal. Nov. 8, 2011); Beecham, 2009

22  WL 3824793 at *4.  Despite this disagreement, having concluded

23  $170/hour is the Sacramento market rate for the second-year

24  associate involved in this case, the Court will compensate

25  paralegals at a $75 hourly rate—a rate judges in this district

26  used recently.  See, e.g., Orr, 2015 WL 9305021 at *4.

27            2.   Hours Expended

28      Union contends spending 93.15 hours on this litigation was

8

1  reasonable.   See Gray Decl., Exh. C.   Eagle raises several

2  objections.

3                        a.    L-3's Motion to Intervene

4       Eagle argues time spent preparing and responding to L-3's

5  motion to intervene is excessive and unreasonable because L-3 is

6  an entity separate and distinct from Eagle—an entity neither

7  party to this litigation nor signatory to the CBA.   Opp'n at 2.

8  In response, Union blames Eagle for having to address L-3's

9  motion, explaining Union had to respond "because Eagle . . .

10  initiated and pursued this action in the first place."   Reply at

11  2.

12       The Court agrees with Eagle.   Although neither party cites

13  a case supporting its position, some cases are instructive.   The

14  Ninth Circuit has recognized that "courts in this circuit [have

15  held] individuals whose motions to intervene have been denied

16  are not 'parties' . . . ."   United States v. City of Los

17  Angeles, No. 02-57097, 2003 WL 22872520, at *1 (9th Cir. Dec. 3,

18  2003).   Here, L-3 was not a party because this Court never

19  granted L-3's motion.   See Min. Order, ECF No. 26 (declining to

20  consider L-3's Motion to Intervene as moot).   Additionally, in

21  Union's opposition to L-3's motion, Union never requested

22  attorneys' fees.   See Donahoe v. Arpaio, No. 10-2756, 2012 WL

23  2675237, at *4 (D. Ariz July 6, 2012) (granting attorneys' fees

24  for opposing another's motion to intervene, in part, because

25  opposing party asked for fees in opposition brief).   Simply put,

26  the Court finds it unreasonable to award fees for time spent

27  opposing a motion by an entity not party to this litigation.

28  ///

1                    b.    Matthew Gauger

2        Eagle contends Union is not entitled to fees for Matthew

3   Gauger's time because Union did not need two shareholder-

4   partners to litigate this case and Gauger's tasks "were menial

5   at best."  Opp'n at 3.  In response, Union maintains Gauger's

6   work was reasonable because his time was minimal (1 hour) and he

7   was uniquely positioned to handle the tasks.  Reply at 2

8   (explaining he spent 15 minutes handling service of process and

9   45 minutes preparing Union's fee motion because he had relevant

10  information about prevailing rates for lawyers in Sacramento).

11  Again, neither party cites supporting authority.

12       The Court agrees with Eagle.  Union inadequately addresses

13  why it is reasonable to have a shareholder-partner assist with

14  issues concerning service of process and market-rates.  The

15  Court is unpersuaded that only Gauger could have handled these

16  issues, especially with Rosenfeld aboard.  At the very least,

17  even as leader of the Sacramento office, Gauger could have

18  directed another where to find material about Sacramento market

19  rates, rather than spend 45 minutes "preparing information about

20  attorney's fees awards . . . ."  Reply at 2.  It is unreasonable

21  to bill partner-level fees to complete these menial tasks.  The

22  Court will not include Gauger's time in its lodestar

23  calculation.

24                    c.   Duplicative Time

25       Eagle argues Union includes duplicative time.  Two

26  paralegals and associate Gray reviewed the applicable rules and

27  researched case law to determine due dates triggered by Eagle's

28  Complaint.  Opp'n at 2.  Union maintains this was not

1    unreasonably duplicative:  After paralegal Nathan initially

2    determined due dates, Rosenfeld noticed a potential timing

3    issue, so associate Gray researched the issue and then paralegal

4    Castillo double-checked the due dates.  Reply at 2-3.

5        The Court finds some of this time duplicative.  Researching

6    procedural rules differs from merely identifying due dates, so

7    Gray's time was reasonably expended.  But, because paralegal

8    Castillo "double checked" the due dates first determined by

9    paralegal Nathan, their time is duplicative.  Had the firm

10   researched the timeliness issue before asking a paralegal to

11   prematurely determine due dates, another paralegal would not have

12   had to "double check" those dates.  The Court will discount the

13   time paralegal Nathan spent identifying due dates.

14                   d.   <u>Union's Motion to Dismiss</u>

15       Next Eagle contends Union should not receive fees for

16   excessive time spent on drafting Union's Motion to Dismiss.

17   Opp'n at 4.  Union maintains this time was reasonable.  Reply at

18   3-4.

19       The Court agrees with Union.  First, in its Complaint, Eagle

20   raised several arguments explaining why this Court should vacate

21   the arbitration award—and each required considerable analysis.

22   Second, to say it is excessive for Union to spend 41 hours

23   drafting a motion to dismiss because it took Eagle only 25 hours

24   to draft an opposition to Union's attorneys' fees motion misses

25   the point:  Eagle is comparing apples to oranges.  <u>See</u> Opp'n at

26   4.  Given Eagle's numerous arguments, it is no surprise Union

27   took considerable time to sufficiently respond.  The Court finds

28   the time spent drafting Union's Motion to Dismiss reasonable.

1          3.   Lodestar Amount

2          There is a strong presumption that the lodestar amount is

3   the reasonable fee.  See United Steelworkers of Am. v. Phelps

4   Dodge Corp., 896 F.2d 403, 406 (9th Cir. 1990).  Although Union

5   "does not seek a multiplier," it asks the Court to consider "the

6   need for deterrence."  See Mot. at 8 (citing E.D. Cal. L.R.

7   293(c)(13)).  But the Court has already done so when it evaluated

8   whether to award fees in the first place.  See Order at 18-20.

9   The Court therefore awards the following in attorneys' fees:

| | | | | | |
|---|---|---|---|---|---|
| David Rosenfeld | 8.9 | x | $530 | = | $ 4,717.00 |
| Caitlin Gray | 75.25 | x | $170 | = | $12,792.50 |
| Teresa Alou | 0.25 | x | $ 75 | = | $    18.75 |
| Judy Castillo | 0.75 | x | $ 75 | = | $    56.25 |
| | | | | | $17,584.50 |

17                      II.   ORDER

18          For the reasons set forth above, the Court GRANTS Union's

19   Motion for Attorneys' Fees and awards 17,584.50.

20          IT IS SO ORDERED.

21   Dated: March 31, 2017

23                              JOHN A. MENDEZ,
                                UNITED STATES DISTRICT JUDGE